ROSALIE FAY, APPELLANT AND CROSS-APPELLEE, V.
DOWDING, DOWDING & DOWDING AND UNITED FIRE
& CASUALTY COMPANY, ITS WORKERS' COMPENSATION
INSURANCE CARRIER, APPELLEES AND CROSS-APPELLANTS.
623 N.W.2d 287

Filed February 9, 2001.    No. S-00-123.

Raymond P. Atwood, Jr., and Ryan C. Holsten, of Atwood & Associates Law Firm, P.C., L.L.O., for appellant.

Darin L. Lang and Walter E. Zink II, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE

Rosalie Fay appeals from a nunc pro tunc order of reversal on review entered by a three-judge review panel of the Nebraska Workers' Compensation Court. In the nunc pro tunc order, the review panel (1) withdrew an order of affirmance on review which had been entered earlier by the same review panel and which had affirmed an award to Fay and (2) in lieu of the order of affirmance, reversed the decision of a single Workers' Compensation Court judge awarding benefits to Fay. Dowding, Dowding & Dowding (Dowding), a law firm and Fay's employer, and United Fire & Casualty Company (United), Dowding's workers' compensation insurance carrier, cross-appeal from the order of affirmance. For the reasons stated below, we vacate the nunc pro tunc order and consider and affirm the order of affirmance. Because we affirm the order of affirmance, we reject Dowding and United's cross-appeal. Fay is awarded $3,000 in attorney fees in connection with this appeal.

## STATEMENT OF FACTS

In this workers' compensation action, Fay alleges that she sustained a cumulative trauma injury to her neck and upper left shoulder, which injury arose out of and in the course of her employment with Dowding. Fay alleges that her injury was caused by the repeated turning of her head from side to side and tilting her head up and down in the performance of her work-related duties. On December 2, 1997, Fay filed a petition with the Nebraska Workers' Compensation Court seeking workers' compensation benefits as a result of her alleged injury. On December 23, Dowding and United filed an answer, generally denying that Fay had sustained a work-related injury. On January 26, 1999, Fay's petition came on for trial before a single judge of the Nebraska Workers' Compensation Court.

The evidence offered at trial established the following: Fay has worked as a law office secretary, office manager, or bookkeeper, at least on a part-time basis, since 1977. In 1990, she began working for Dowding in Grand Island, Nebraska, where she was employed at the time of the hearing before the single judge. Since 1990, Fay has performed essentially the same

duties for Dowding. Fay's daily tasks may include organizing the mail, posting checks, taking dictation, making telephone calls, writing the office checks, meeting with sales representatives, handling the office accounts, organizing files, supervising staff, assisting with any minor computer problems that may develop, and performing bookkeeping duties for certain Dowding corporate clients. Approximately 85 to 90 percent of her workday is spent at her desk.

Beginning in December 1995, Fay began to notice numbness and tingling in her left hand and arm, together with pain in her left shoulder. Later, the pain spread to her neck. In her deposition testimony, Fay stated that there were occasions when the pain was so severe that she could not get out of bed in the morning to report to work. As a result of her pain, Fay missed several half-days from work in December 1995 and January 1996.

Fay also testified that she voluntarily took 4 days off from work, from March 19 to 22, 1996, to see if her symptoms improved when she was not at the office. She testified that it was taking this time off that led her to conclude that her injury was work-related because during those 4 days, her symptoms abated.

Fay initially sought medical treatment for her injury on January 4, 1996, with her family physician, Dr. D.R. Cronk. Dr. Cronk diagnosed Fay as having multiple bone spur formations at the C3-7 levels, together with a narrowing of the disks. In letters which are in evidence, Dr. Cronk opined that Fay's work "aggravates" her symptoms and that the repetitive nature of Fay's work, in which she turns her head from side to side and tilts her head up and down, "can result in the type of pain and symptoms that have resulted in her present condition." Dr. Douglas Long, whom Fay apparently saw for a second opinion, stated in a report dated August 2, 1996, that Fay's symptoms of neck and left shoulder pain "appear to be aggravated by work."

Dr. D.M. Gammel examined Fay on May 15, 1998, for the purpose of assigning Fay an impairment rating and in a report dated that same day, stated, "It is my opinion that Ms. Fay's work duties have aggravated her degenerative condition and caused the cumulative trauma injury to musculature of her cervical spine with radiation to the left shoulder area." On the basis

of this diagnosis, Dr. Gammel assigned Fay a whole-body impairment rating of 5 percent.

Also received into evidence by the single judge were reports by two vocational rehabilitation counselors. In a report dated August 20, 1998, Robert Anderson, the court-appointed vocational rehabilitation counselor, opined that as a result of her injury, Fay had a 0-percent loss of earning capacity, because there were no jobs for which Fay had training, experience, and the physical capability to perform prior to her injury that she could not perform after her injury. In a rebuttal report dated October 16, 1998, vocational rehabilitation counselor Paulette Freeman wrote that Fay had sustained an 8- to 12-percent loss of earning capacity, primarily because of Fay's loss of access to other jobs in the labor market.

On August 2, 1999, the single judge entered an award in which the judge determined that on or about January 4, 1996, Fay suffered an injury to her cervical spine as a result of an accident arising out of and in the course of her employment with Dowding. The award stated that Fay's repetitive turning of her neck from side to side, tilting of her head up and down, and bending and flexing her upper back, neck, and shoulders, all during her performance of work-related activities, had caused her injury. The award stated that causation for Fay's injury was found in Dr. Cronk's medical reports. The single judge found that Fay had reached maximum medical improvement on June 25, 1996, the last day she was treated by Dr. Cronk for her neck injury. The single judge declined to award Fay any temporary total disability payments, finding that there was no evidence that the 4 days Fay missed work in March 1996 had been prescribed by any physician. Nevertheless, the single judge awarded Fay $34.85 per week for 300 weeks in permanent partial disability payments, representing a 10-percent loss of earning capacity.

On August 13, 1999, Dowding and United filed an application for review, seeking review of the single judge's award by a three-judge panel of the Nebraska Workers' Compensation Court. Their appeal came on for hearing on December 14.

The review panel affirmed the single judge's award in the order of affirmance dated and filed on December 23, 1999. However, 6 days later, on December 29, the same review panel

entered an order styled "nunc pro tunc" withdrawing the order of affirmance and, instead, reversing the award.

In this nunc pro tunc or second order, the review panel explained its rationale for the issuance of the nunc pro tunc order and stated:

> [Following the December 14, 1999, hearing the] review panel discussed [Dowding and United's] appeal among its members and an order of affirmance on review was prepared and signed by all the members of the review panel. The file, to include the order of affirmance on review, was transported by courier from Omaha, Nebraska, to the Workers' Compensation Court at the State Capitol Building in Lincoln on December 21, 1999. On that same date, the Court received the opinion of Jordan v. Morrill County, 258 Neb. 380, a decision of the Nebraska Supreme Court rendered on December 17, 1999. After discussion among the review panel members, there was unanimous agreement that the Jordan case required that the order of affirmance on review be withdrawn and an order of reversal substituted in its place. And this is where the clerical error arose. In communicating to the office in Lincoln that this file should be held so that the new opinion could be substituted, there was reference to the Dowding file. On December 14, 1999, there was also argued a case in which the employee's name was Phyllis Dowding. Inadvertently, the order of affirmance on this cause was sent out and the opinion was held in the Phyllis Dowding file. We believe that this is the kind of clerical error that is correctable by a nunc pro tunc order.

In its nunc pro tunc order, the review panel withdrew the order of affirmance and substituted a three-paragraph opinion in which it concluded, on the basis of this court's decision in *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999), that the single judge's award should be reversed. In *Jordan*, this court held that in order for an injured worker claiming a cumulative or repetitive trauma injury as a result of an accident to be entitled, as a matter of law, to receive benefits under Nebraska's workers' compensation statutes, "[t]he injury must require the employee to discontinue employment and seek

medical treatment. . . . The injury must result in a disability, and the disability must be such that the employee can no longer perform the work required." *Id.* at 389, 603 N.W.2d at 419.

> The review panel determined in its second order that it was unable to say [the single judge] was clearly wrong in finding that [Fay] suffered no temporary total disability [because the single judge found] that the plaintiff was still physically able to perform the duties of her employment although she chose not to work for four days in the month of March, 1996.

Given these factual findings, the review panel concluded in its second opinion that the single judge reached an erroneous legal conclusion in awarding Fay workers' compensation benefits because under the *Jordan* opinion, "a repetitive trauma injury must result in a disability, and the disability must be such that the employee can no longer perform the work required." The review panel noted in its second order that implicit in the single judge's denial of temporary total disability, the single judge "did not find that . . . Fay was unable to perform the work required." Given this finding, the review panel concluded that because Fay had not suffered a disability such that she was unable to perform her work, she had failed to prove that she had sustained an injury under the Nebraska Workers' Compensation Act. In its nunc pro tunc order, the review panel reversed the award entered by the single judge and dismissed Fay's petition for workers' compensation benefits.

Fay appeals the review panel's nunc pro tunc order. Dowding and United have filed a cross-appeal, challenging the order of affirmance.

## ASSIGNMENTS OF ERROR .

On appeal, Fay assigns three errors which, restated, claim that the review panel erred (1) in entering its second order, (2) in reversing and dismissing the award entered by the single judge, and (3) in substituting its view of the facts for those of the single judge. On cross-appeal, Dowding and United assign three errors which combine to form two. They assert, restated, that should this court conclude that the order of affirmance is controlling, such order is in error because it affirms the award of the single

judge who erred (1) as a matter of law in determining that Fay had suffered an "accident," which accident arose out of and in the course of her employment with Dowding, and (2) in admitting the opinion of Fay's rebuttal vocational rehabilitation counselor.

## STANDARDS OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Cum. Supp. 2000), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000); *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Logsdon v. ISCO Co., supra.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Logsdon v. ISCO Co., supra*; *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra.*

## ANALYSIS

As an initial matter, we must determine which order is properly on review before this court. Fay has appealed, challenging the propriety of the entry of the review panel's nunc pro tunc or second order and rulings therein which resulted in a reversal of the award of the single judge. Dowding and United have cross-appealed the order which affirmed the award of the single judge. For the reasons set forth below, we conclude that the review panel exceeded its statutory authority in issuing the nunc pro tunc order, and accordingly, we vacate this second order. Accordingly, we consider the order of affirmance initially entered by the review panel, and for the reasons set forth below, we affirm that order.

### LACK OF AUTHORITY OF REVIEW PANEL
### TO ENTER NUNC PRO TUNC ORDER

■ We have repeatedly held that the Nebraska Workers' Compensation Court, as a statutory tribunal, is a court of limited and special jurisdiction and possesses only such authority as is delineated by statute. See, e.g., *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra*; *Crabb v. Bishop Clarkson Mem. Hosp.*, 256 Neb. 636, 591 N.W.2d 756 (1999); *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997).

■ In its second order, the review panel does not cite to any statutory authority for its issuance of its "nunc pro tunc" order which by its terms changes its original order of affirmance to a reversal. In *Sheldon-Zimbelman*, we determined that the only Nebraska Workers' Compensation Act provisions which permit the Workers' Compensation Court to modify or change previously issued orders were Neb. Rev. Stat. §§ 48-141 and 48-180 (Reissue 1998). Accordingly, we review the appropriateness of the second order under these sections.

Section 48-141 permits, inter alia, the Workers' Compensation Court to modify an award "on the ground of increase or decrease of incapacity due solely to the injury." § 48-141(2). Because the review panel's nunc pro tunc order reversing the single judge's award was not based upon an increase or decrease in Fay's incapacity, the nunc pro tunc order cannot be justified under § 48-141.

Section 48-180 provides that the Nebraska Workers' Compensation Court may, "on its own motion, modify or change its findings, order, award, or judgment at any time before appeal and within ten days from the date of such findings, order, award, or judgment for the purpose of correcting any ambiguity, clerical error, or patent or obvious error." Although the review panel did not cite to § 48-180 in its second order, it appears the review panel was attempting to come within the section's provisions by stating that the basis for the second order was a "clerical error." The second order states that "[i]nadvertently, the order of affirmance on this cause was sent out . . . . We believe that this is the kind of clerical error that is correctable by a nunc pro tunc order." Accordingly, we analyze the review panel's second order which it characterized as necessitated by clerical error under § 48-180.

■ When construing a statute, we are guided by the presumption that the Legislature intended a sensible, rather than an absurd, result in enacting the statute. *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000); *Battle Creek State Bank v. Haake*, 255 Neb. 666, 587 N.W.2d 83 (1998). As a further aid to statutory interpretation, we must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* When considering a series or a collection of statutes pertaining to a certain subject matter which are in pari materia, we have stated that they may be conjunctively considered to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra.*

■ The language used by the Legislature in § 48-180 is comparable to language generally describing a court's inherent power to issue nunc pro tunc orders. In this regard, we have repeatedly recognized that the function of a nunc pro tunc order is to correct "a clerical error or a scrivener's error." *Neujahr v. Neujahr*, 223 Neb. 722, 726, 393 N.W.2d 47, 50 (1986). See, also, *Continental Oil Co. v. Harris*, 214 Neb. 422, 333 N.W.2d 921 (1983) (nunc pro tunc order corrects clerical error); *Larson v. Bedke*, 211 Neb. 247, 318 N.W.2d 253 (1982), *modified* 212 Neb. 134, 322 N.W.2d 367 (same); *State ex rel. Schuler v. Dunbar*, 208 Neb. 69, 302 N.W.2d 674 (1981) (same). Section 48-180 is the statutory embodiment of nunc pro tunc principles. Thus, pursuant to § 48-180, the Nebraska Workers' Compensation Court is statutorily authorized to issue proper nunc pro tunc orders. We therefore examine the review panel's second order under nunc pro tunc principles in order to determine if it was properly issued.

■ We have previously recognized that "[t]he office of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded." *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 113, 459 N.W.2d 519, 522 (1990). See, also, *Andersen v. American Family Mut. Ins. Co.*, 249 Neb. 169, 542 N.W.2d 703 (1996). We have also held that "[i]t is not the function of an order nunc pro tunc to

change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended." *Interstate Printing Co. v. Department of Revenue*, 236 Neb. at 113, 459 N.W.2d at 522. See, also, *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983) (nunc pro tunc order cannot be used to enlarge judgment as originally rendered or to change rights fixed by judgment); *Continental Oil Co. v. Harris*, 214 Neb. at 424, 333 N.W.2d at 923 (nunc pro tunc order cannot "be employed where the fault in the original judgment is that it is wrong as a matter of law, nor can it be employed to allow the court to review and reverse its action with respect to what it formerly did or refused to do"); *Gunia v. Morton*, 175 Neb. 53, 56, 120 N.W.2d 371, 373 (1963) ("[i]t is not the purpose of an order nunc pro tunc to correct, change, or modify action previously taken by the court").

In its nunc pro tunc order, the review panel did not seek to correct the issuance of an order which did not accurately reflect the decision of the review panel. Instead, the review panel sought to substitute a reversal for an affirmance. As demonstrated in the above cases, an order nunc pro tunc cannot be used to change or reverse a judgment entered. The review panel could not change the action previously taken affirming the award of the single judge to reversing the award under the auspices of a nunc pro tunc order. Thus, the review panel exceeded its authority under § 48-180 in issuing its second order, and accordingly, we vacate the review panel's second order and consider the order of affirmance originally entered.

## REPETITIVE TRAUMA CLAIM

Having determined that the review panel was without authority to issue its second order and having vacated that order, we now consider the review panel's order of affirmance. Based upon our review of the law and the facts in this case, we conclude that the review panel's order which affirmed the single judge's award should be affirmed.

On appeal, Fay argues that the order of affirmance was correctly decided. On cross-appeal, Dowding and United argue that the review panel erred in affirming the award entered by the sin-

gle judge because the single judge erred as a matter of law in determining that Fay suffered an accident, which accident arose out of and in the course of employment. We agree with Fay.

In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, this court, like the review panel, reviews the findings of the single judge who conducted the original hearing. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000); *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Logsdon v. ISCO Co., supra.*

Pursuant to Neb. Rev. Stat. § 48-101 (Reissue 1998),

When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

We have previously stated that a condition resulting from repetitive trauma has the characteristics of both an accidental injury and an occupational disease. See *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999). In the instant case, the single judge held that Fay "had suffered an injury to her cervical spine as a result of an accident." Accordingly, we will consider the alleged injury as caused by an accident, in the same manner as did the compensation court. See *id.*

Under Neb. Rev. Stat. § 48-151(2) (Cum. Supp. 2000), which subsection remains the same as that in effect in 1996, an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." We have previously recognized that under § 48-151(2), three elements must be demonstrated in order to prove that a workers' compensation injury is the result of an accident: (1) the injury must be "unexpected or unforeseen," (2) the accident must happen "suddenly and violently," and (3) the accident must produce "at the time objective symptoms of injury." *Sandel v. Packaging Co. of*

*America*, 211 Neb. 149, 153, 317 N.W.2d 910, 913 (1982). These three elements are conjunctive, and a failure to establish any one precludes an award based on a claim of accident.

In the instant case, there is no dispute on appeal that Fay produced evidence of the first and third elements of an accident, that is, that Fay's alleged injury was unexpected and unforeseen and that Fay complained of symptoms. See *Jordan v. Morrill County, supra.* The remaining issue is whether Fay satisfied the second element of an accident, that is, that the accident must happen "suddenly and violently."

We addressed the second element in *Jordan v. Morrill County, supra.* In *Jordan*, we stated that "[f]or purposes of the Nebraska Workers' Compensation Act, 'suddenly and violently' does not mean instantaneously and with force, but, rather, the element is satisfied if the injury occurs at an identifiable point in time requiring the employee to discontinue employment and seek medical treatment." 258 Neb. at 389, 603 N.W.2d at 419. We explained that the "injury must result in a disability, and the disability must be such that the employee *can no longer perform the work required.*" (Emphasis supplied.) *Id.* Finally, we disapproved our previous decisions in *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 469 N.W.2d 542 (1991), and *Vencil v. Valmont Indus.*, 239 Neb. 31, 473 N.W.2d 409 (1991), to the extent that those decisions could be interpreted to mean that the interruption of employment was something other than the discontinuation of employment. In *Jordan*, the claimant operated a road grader for Morrill County, Nebraska, and alleged that he had sustained a repetitive trauma injury to his right shoulder. We affirmed the judgment of the review panel reversing the single judge's award of benefits to the claimant, concluding that the review panel properly determined that he had not satisfied the second element of an accident because he had not missed any time from work.

In the instant case, the single judge found, inter alia, as follows:

> The Court . . . finds that [Fay] did have to interrupt employment and seek medical treatment for [her] injuries, which interruption occurred on January 4, 1996, as well as during 4 days in March, 1996. [Fay] testified that in March, during her physical therapy, she took off the rest of

a week, Tuesday through Friday, which the Court finds was from and including March 19, 1996, through and including March 22, 1996, a period of 4/7 weeks. The Court declines to find that this entitles [Fay] to temporary total disability for these dates, as there is no evidence in the record that any doctor had written an off work slip for this absence from work.

By these findings, it is evident that the single judge refused to award Fay temporary total disability benefits for her voluntary absence from work in March 1996. It is equally evident, however, that the single judge determined that on January 4, 1996, Fay could not work, interrupted her work, and sought medical treatment.

As we stated in *Jordan v. Morrill County*, 258 Neb. 380, 389, 603 N.W.2d 411, 419 (1999), in order to receive compensation benefits for an accident, the injured employee must prove that he or she has sustained an injury resulting in disability and "the disability must be such that the employee can no longer perform the work required." With regard to Fay's evidence that she voluntarily absented herself from work in March 1996, the single judge was correct that such evidence is insufficient to prove that Fay was unable to perform the work required. It is axiomatic that no disability benefits will be paid under the Nebraska Workers' Compensation Act unless there is evidence that a disability has been suffered. See *Doggett v. Brunswick Corp.*, 217 Neb. 166, 347 N.W.2d 877 (1984).

The single judge found, however, that on January 4, 1996, Fay could not work as a result of her injury and that she was forced to seek medical treatment. These factual findings satisfy our requirements set forth in *Jordan* that "[t]he injury must require the employee to discontinue employment and seek medical treatment." 258 Neb. at 389, 603 N.W.2d at 419. We further observe that there was medical evidence in the record upon which the single judge could conclude that Fay's condition was work related.

The single judge's finding of fact with regard to Fay's inability to work on January 4, 1996, and her pursuit of medical treatment has the effect of a jury verdict and will not be disturbed unless clearly wrong. See *Logsdon v. ISCO Co.*, 260 Neb. 624,

618 N.W.2d 667 (2000). Finding no error, we affirm the review panel's order which affirmed the single judge's award of workers' compensation benefits to Fay.

## ADMISSION OF REBUTTAL REPORT

On appeal, Dowding and United also claim that the single judge erred "as a matter of law" with the admission into evidence of Freeman's rebuttal vocational rehabilitation loss of earning capacity report essentially based on a criticism of its content and methodology. Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000); *Sheridan v. Catering Mgmt., Inc.*, 252 Neb. 825, 566 N.W.2d 110 (1997). Neb. Rev. Stat. § 48-162.01(3) (Reissue 1998) sets forth that "[i]t shall be a rebuttable presumption that any opinion expressed [by a court-appointed vocational rehabilitation counselor] as the result of such a loss-of-earning-power evaluation is correct." The statute, therefore, anticipates the admission of evidence to rebut the presumption of correctness statutorily assigned to any loss of earning capacity report prepared by the court-appointed vocational rehabilitation counselor. In the instant case, the single judge admitted into evidence Freeman's report as a rebuttal to the report of Fay's loss of earning capacity prepared by Anderson, the court-appointed vocational rehabilitation counselor. We determine there was no abuse of discretion in the single judge's ruling admitting the rebuttal vocational rehabilitation report, and accordingly, there is no merit to this assignment of error.

## ATTORNEY FEES

Pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2000), Fay has moved for an award of attorney fees in this appeal. In accordance with § 48-125, Fay is entitled to attorney fees because both Dowding and United cross-appealed and failed to obtain any reduction in Fay's award. We determine that $3,000 is a fair and reasonable attorney fee and accordingly award Fay that amount. Pursuant to § 48-125(2), interest on the final award is also assessed against Dowding and United.

## CONCLUSION

The review panel did not possess the statutory authority under § 48-180 to issue the nunc pro tunc order, and accordingly, we vacate the nunc pro tunc order. For the reasons set forth herein, the review panel's order which affirmed the award of the single judge is affirmed, and the cross-appeal is determined to be without merit. Attorney fees are awarded to Fay in the amount of $3,000.

NUNC PRO TUNC ORDER VACATED.
ORDER OF AFFIRMANCE AFFIRMED.

STEPHAN, J., not participating.