TREVOR WALSH, APPELLEE AND CROSS-APPELLANT, V.
CITY OF OMAHA, APPELLANT AND CROSS-APPELLEE.
660 N.W.2d 187

Filed April 22, 2003.   No. A-02-1036.

Jo A. Cavel, Assistant Omaha City Attorney, for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellee.

IRWIN, Chief Judge, and CARLSON and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

The City of Omaha (the City) appeals from an order of the Nebraska Workers' Compensation Court review panel affirming the decision of the trial court. Trevor Walsh cross-appeals from the same order. For the reasons set forth herein, the judgment of the review panel is affirmed in its entirety.

## BACKGROUND

On February 7, 2000, Walsh was a police officer with the City. While engaged in the duties of his employment, he was involved in an automobile accident in which he suffered injuries to his right knee and lower back. The City has a court-approved workers' compensation managed care plan with Methodist WorkComp Partners (MWP) pursuant to Neb. Rev. Stat. § 48-120.02 (Supp. 1999). After the automobile accident, Walsh informed MWP that he wanted to be treated by Dr. Donald Walla for his right knee injury and Dr. Andrew Messer for his back injury. Walla and Messer were not participating physicians in the MWP managed care plan.

On February 9, 2000, MWP faxed a form letter to both Walla and Messer advising them that the City has a contract with MWP to manage all workers' compensation injuries. A copy of MWP's managed care plan's rules, terms, and conditions was also faxed with each letter. The letter asked Walla and Messer to fax a copy of the letter back to MWP after filling in and signing the bottom portion of the letter indicating their acceptance or denial of the managed care plan for the treatment of Walsh.

Walsh had his first appointments with Walla and Messer on February 16 and 24, 2000, respectively. As of February 25, neither Walla nor Messer had responded to MWP's request for the physicians' acceptance or denial of the managed care plan. As a result, the workers' compensation coordinator for the City sent a letter to Walsh stating that Walsh's treatment by Walla would not be covered by workers' compensation because Walla had not

accepted the plan. The coordinator made an appointment for Walsh to be evaluated by a participating managed care plan physician. On March 4, MWP faxed the letter regarding the acceptance or denial of the plan a second time to Walla and Messer. MWP faxed the letter to Walla and Messer yet again on March 5. Two weeks later, MWP faxed the letter again to Messer. MWP did not receive a response from either Walla or Messer.

On March 9, 2000, counsel for the City sent a letter to Walsh's counsel informing him that the medical bills from Walla and Messer would not be paid by workers' compensation because Walla and Messer had not agreed to comply with the managed care plan. On August 7, the workers' compensation coordinator for the City sent a letter to Walsh stating that medical treatment by Walla and Messer would not be covered by workers' compensation. In October 2000, MWP sent the letter regarding the acceptance or denial of the plan again to both Walla and Messer. Messer signed the letter and faxed it back to MWP, but did not indicate whether he was accepting or denying the managed care plan for the treatment of Walsh.

On November 1, 2000, Walsh had back surgery performed by Messer. On December 20, Walsh had surgery on his right knee performed by Walla. He had a second right knee surgery on March 3, 2001, which was also done by Walla.

On May 2, 2001, Messer faxed the acceptance or denial letter a second time to MWP, this time indicating that he accepted the managed care plan for the treatment of Walsh. On May 4, Walla faxed the acceptance or denial letter to MWP indicating that he accepted the managed care plan.

Walsh filed a petition in the Nebraska Workers' Compensation Court on November 1, 2000, in which he sought payment of medical expenses, temporary total disability benefits, permanent partial disability benefits, waiting-time penalties, and attorney fees. In its answer, the City admitted that Walsh was in an accident on February 7 that arose out of and in the course of his employment with the City and that such accident resulted in injury to Walsh's right knee and lower back. The City further alleged that no amounts were due and owing to Walsh for his right knee and low-back injuries because the City had paid Walsh the benefits payable under the Nebraska Workers' Compensation Act.

Trial was held on July 6, 2001. The issues at trial involved determining what workers' compensation benefits Walsh was entitled to for various time periods, whether the City had to pay for medical expenses from Walsh's treatment by Walla and Messer given the physicians' late acceptance of the managed care plan, and whether Walsh was entitled to any waiting-time penalties. The trial court found that Walsh was temporarily totally disabled from February 7 to April 23, 2000, temporarily partially disabled from April 24 to September 22, 2000, temporarily totally disabled from October 31 to December 1, 2000, and temporarily totally disabled from December 20, 2000, to the date of trial on July 6, 2001, and that he would continue to be temporarily totally disabled for an indefinite future period of time. The trial court further found that if Walsh's total disability ceased, he would be entitled to compensation for any residual permanent partial disability due to the accident and injury. In addition, the trial court ordered the City to pay the medical expenses set forth in exhibit 38 totaling $41,106.96, which included the medical expenses from treatment by Walla and Messer, and to continue to pay future medical expenses as long as the providers agree to abide by the managed care plan. The trial court found that the medical expenses from Walla's and Messer's treatment of Walsh should not be denied simply because the acceptances of the managed care plan came after Walla and Messer began treating Walsh and after they performed surgical procedures. The trial court found that there is no statute or Workers' Compensation Court rule that prohibits a retrospective acceptance of the managed care plan by physicians. The court further found that the City was not disadvantaged by the late acceptance. Finally, the trial court found that a reasonable controversy existed such that Walsh was not entitled to any waiting-time penalties for the City's failure to pay temporary total disability benefits.

The City appealed to the review panel, and Walsh cross-appealed. The review panel affirmed the trial court's order in its entirety. In its order, the review panel found that at oral argument, Walsh withdrew his assignment that the trial court erred in failing to grant him waiting-time penalties for the City's failure to pay temporary total disability benefits. Subsequently, Walsh filed a motion for an order nunc pro tunc, pursuant to Neb. Rev. Stat.

§ 48-180 (Reissue 1998), asking the review panel to change its finding that Walsh had withdrawn his assignment of error regarding waiting-time penalties and arguing that he did not withdraw the assignment at oral argument. The review panel overruled Walsh's motion for an order nunc pro tunc, finding that to change its order of affirmance would exceed the authority given to the review panel in § 48-180. The City has appealed from the review panel's order, and Walsh has cross-appealed.

## ASSIGNMENTS OF ERROR

The City assigns that the review panel erred in affirming the trial court's finding that the City was required to pay the medical expenses from Walsh's treatment with Walla and Messer.

On cross-appeal, Walsh assigns that the review panel erred in overruling his motion for an order nunc pro tunc. Walsh also assigns that the trial court erred in finding that a reasonable controversy existed such that he was not entitled to waiting-time penalties for the City's failure to pay temporary total disability benefits from October 31 through December 1, 2000, and from December 20, 2000, through the date of trial on July 6, 2001.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002); *Schwan's Sales Enters. v. Hitz*, 263 Neb. 327, 640 N.W.2d 15 (2002).

■ The meaning of a statute is a question of law. *Vega v. Iowa Beef Processors, supra*; *Nicholson v. General Cas. Co. of Wis.*, 262 Neb. 879, 636 N.W.2d 372 (2001). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002); *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002).

## ANALYSIS

### MEDICAL EXPENSES

The City assigns that the review panel erred in affirming the trial court's finding that the City was required to pay the medical expenses from Walsh's treatment with Walla and Messer. The City argues that it is not obligated to pay the medical expenses from Walsh's treatment with Walla and Messer because the physicians did not agree to comply with the managed care plan until after they began treating Walsh.

It is undisputed that both Walla and Messer were not participating physicians in the MWP managed care plan. Neb. Rev. Stat. § 48-120(9) (Cum. Supp. 2002) and § 48-120.02(2)(h) allow an employee who is covered under the employer's workers' compensation managed care plan to receive medical care from a physician who is not a participant in a managed care plan if the physician agrees to comply with all the rules, terms, and conditions of the managed care plan. Specifically, § 48-120.02(2)(h) provides that a managed care plan shall be certified if the plan

> [a]uthorizes employees to receive medical, surgical, and hospital services from a physician who is not a member of the managed care plan if such physician has been selected by the employee pursuant to subsection (2) of section 48-120 and if such physician agrees to refer the employee to the managed care plan for any other treatment that the employee may require and agrees to comply with all the rules, terms, and conditions of the managed care plan.

Section 48-120(9) states in part:

> Notwithstanding any other provision of this section, an insurer, a risk management pool, or a self-insured employer may contract for medical, surgical, hospital, and rehabilitation services to be provided through a managed care plan certified pursuant to section 48-120.02. Once liability for medical, surgical, and hospital services has been accepted or determined, the employer may require that employees subject to the contract receive medical, surgical, and hospital services in the manner prescribed in the contract, except that an employee may receive services from a physician selected by the employee pursuant to subsection (2) of this

section if the physician so selected agrees to refer the employee to the managed care plan for any other treatment that the employee may require and if the physician so selected agrees to comply with all the rules, terms, and conditions of the managed care plan.

Similarly, Workers' Comp. Ct. R. of Proc. 56 (2002) allows an injured employee who is covered under the employer's managed care plan to choose a nonparticipating physician as long as the physician agrees to abide by the managed care plan.

The City argues that based on the language in the statutes and in the workers' compensation rule, a nonparticipating physician must agree to comply with the managed care plan before the physician begins treating the employee. It argues that a physician's agreement to comply with the managed care plan after treatment begins does not obligate the employer to pay any of the medical expenses incurred with that physician before or after the date of the physician's agreement. The City contends that it is therefore not obligated to pay for the medical expenses from Walla and Messer because Walla and Messer did not agree to comply with the managed care plan until after they had treated Walsh for over a year. Walsh argues that the language in the statutes does not specify when a physician's agreement to comply with the plan must be obtained in order for the medical services to be covered by workers' compensation. He contends that as long as a physician's agreement to comply with the managed care plan is obtained at some point during treatment, the employer is obligated to pay the medical expenses incurred with that physician before and after the date of the physician's agreement. We agree with Walsh. Sections 48-120(9) and 48-120.02(2)(h) allow an employee to receive medical care from a physician who is not a participating member of a managed care plan if the physician agrees to comply with the rules, terms, and conditions of the managed care plan. The statutes do not state that a physician's acceptance of the managed care plan's terms and conditions must occur before any treatment is rendered, as the City contends. The statutes indicate only that the physician's agreement must be obtained in order for the expenses incurred with that physician to be covered by workers' compensation. It is not within the province of the courts to read

a meaning into a statute that is not there or to read anything direct and plain out of a statute. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002); *Daniels v. Allstate Indemnity Co.*, 261 Neb. 671, 624 N.W.2d 636 (2001). In addition, the Nebraska Workers' Compensation Act is intended to provide benefits for employees who are injured on the job, and the terms of the act are to be broadly construed to accomplish the beneficent purposes of the act. *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001). See *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Based on these principles, we conclude that a nonparticipating physician's agreement to comply with a managed care plan can be obtained at any time while the physician is treating an employee. Once the physician agrees to comply with the plan, the employer is obligated to pay for all the medical expenses from that physician. Walla and Messer both agreed to comply with the managed care plan in May 2001. Walla's and Messer's agreements satisfied §§ 48-120(9) and 48-120.02(2)(h) so as to obligate the City to pay for the medical expenses from Walsh's treatment with Walla and Messer.

Despite our determination that a nonparticipating physician's agreement to comply with a managed care plan can be obtained after treatment has begun, we point out that an employee is taking a risk by beginning treatment and continuing treatment with a nonparticipating physician who has not agreed to comply with the managed care plan. If the physician never agrees to comply with the plan, none of the medical expenses incurred with that physician will be covered by workers' compensation.

The City also argues that the trial court erred in finding that the City was not prejudiced by Walla's and Messer's late agreements to comply with the managed care plan. The City did not present any evidence at trial to show that it was prejudiced in any way by Walla's and Messer's late agreements to comply with the plan. In addition, there is no evidence to indicate that Walla's and Messer's treatment of Walsh before they agreed to abide by the plan was contrary to the rules, terms, and conditions of the plan. Therefore, the trial court did not err in concluding that the City was not disadvantaged by Walla's and Messer's late acceptance and the review panel did not err in affirming such a finding.

In conclusion, the review panel did not err in affirming the trial court's finding that the City must pay the medical expenses from Walsh's treatment with Walla and Messer. Thus, the City must pay the medical expenses set forth in exhibit 38, totaling $41,106.96. The exhibit includes the medical expenses from Walla's and Messer's treatment of Walsh's right knee and low-back injuries, as well as expenses associated with other medical professionals. The City has not challenged its obligation to pay these other expenses on appeal. Therefore, the City must pay all of the expenses set forth in exhibit 38.

## CROSS-APPEAL

On cross-appeal, Walsh argues that the review panel erred in failing to grant his motion for an order nunc pro tunc to correct the allegedly erroneous finding that Walsh had withdrawn his request for waiting-time penalties at oral argument. The review panel overruled the motion, finding that to change its order would exceed its authority under § 48-180. The Nebraska Workers' Compensation Court, as a statutory tribunal, is a court of limited and special jurisdiction and possesses only such authority as is delineated by statute. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001); *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). Section 48-180 provides that the Nebraska Workers' Compensation Court may, "on its own motion, modify or change its findings, order, award, or judgment at any time before appeal and within ten days from the date of such findings, order, award, or judgment for the purpose of correcting any ambiguity, clerical error, or patent or obvious error." Section 48-180 is the statutory embodiment of nunc pro tunc principles. Thus, pursuant to § 48-180, the Nebraska Workers' Compensation Court is statutorily authorized to issue proper nunc pro tunc orders. *Fay v. Dowding, Dowding, supra.* The function of a nunc pro tunc order is to correct " 'a clerical error or a scrivener's error.' " *Id.* at 225, 623 N.W.2d at 294. Accord *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986). " '[I]t is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended.' " *Fay*

*v. Dowding, Dowding*, 261 Neb. at 225-26, 623 N.W.2d at 295, quoting *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990).

▪ Walsh was asking the review panel to reverse its finding that Walsh had withdrawn the waiting-time penalties assignment at oral argument and to consider the merits of Walsh's cross-appeal for such penalties. Walsh argues that the review panel made a clerical error when it found that Walsh had withdrawn his assignment of error. However, Walsh was asking the review panel to do more than correct a clerical error. He was asking the review panel to change or revise its order. An order nunc pro tunc cannot be used to change or reverse a judgment entered. *Fay v. Dowding, Dowding, supra.* The review panel correctly determined that to change its order would exceed its authority under § 48-180, and Walsh's assignment of error is without merit.

▪ Walsh also assigns on cross-appeal that the trial court erred in finding that a reasonable controversy existed such that Walsh was not entitled to waiting-time penalties under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2002) for the City's failure to pay temporary total disability benefits from October 31 through December 1, 2000, and from December 20, 2000, through the date of trial on July 6, 2001. As previously stated, the review panel found that Walsh withdrew his assignment of error regarding waiting-time penalties at oral argument before the review panel. Thus, Walsh's assignment of error regarding waiting-time penalties was, in effect, never raised to the review panel and we need not address Walsh's assignment of error. A party waives all errors of the workers' compensation trial judge not specifically assigned to the review panel, and as such, an appellate court cannot consider errors of the trial court which were not assigned to the review panel. See *Cochran v. Bill's Trucking*, 10 Neb. App. 48, 624 N.W.2d 338 (2001).

## ATTORNEY FEES

Walsh has requested an award of attorney fees in this appeal pursuant to § 48-125, which provides that if an award is not reduced after the employer files an application for review by an appellate court, the employee shall be allowed reasonable attorney fees for proceedings in that court. Because we affirm the

decision of the review panel, Walsh is entitled to attorney fees for proceedings in this court. However, Walsh had not yet filed a motion for the allowance of attorney fees, supported by an affidavit which justifies the amount of the fee sought for services in the appellate court, as required by Neb. Ct. R. of Prac. 9F (rev. 2000). Accordingly, we are unable to award attorney fees at this time.

## CONCLUSION

For the reasons set forth herein, the review panel's order affirming the award of the trial court is affirmed in its entirety.

AFFIRMED.