IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DONNELLY V. ELITE STAFFING GLOBAL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STEPHANEY DONNELLY, APPELLEE,

V.

ELITE STAFFING GLOBAL, INC., ET AL., APPELLANTS.


Filed November 10, 2015.    No. A-15-286.


Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed in part, and in part reversed and remanded with directions.

Melvin C. Hansen, of Hansen, Lautenbaugh & Buckley, L.L.P., for appellants.

Franklin E. Miner, of Miner, Scholz & Dike, P.C., L.L.O., for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

Elite Staffing Global, Inc. (Elite Staffing), appeals from an award from the Nebraska Workers' Compensation Court. Because we find that the record does not support a finding that Stephaney Donnelly was unable to work during the six weeks immediately following her injury, we reverse the compensation court's award of temporary total disability. We affirm the compensation court's award of attorney fees, but because no evidence in the record demonstrates that the $6,000 fee is a reasonable amount, we remand for evidence and specific findings as to what amount is reasonable.

- 1 -

BACKGROUND

Elite Staffing, a temporary staffing agency, placed Donnelly at a company called Tenneco punching holes in metal exhaust components in April 2013. Two days after beginning this position, on April 16, Donnelly caught a piece of freshly-welded metal between the "pinky finger" and "ring finger" of her left hand. Although Donnelly was wearing gloves, the gloves were not heat resistant and she received second-degree blistering burns on both fingers. An employee at the front desk of Tenneco had Donnelly place her hand in ice, applied burn ointment, bandaged the hand, and sent Donnelly home. Donnelly contacted Elite Staffing about the injury, who directed her to her primary care doctor. Elite Staffing also informed Donnelly that day that Tenneco had no more work for her.

The following day, Donnelly visited her primary care doctor, who prescribed bacitracin, bandaging, and cleansing with soap on a daily basis to treat the burns. After visiting her family care doctor, Donnelly again contacted Elite Staffing regarding payment of medical bills, but Elite Staffing told her that they could provide no help.

Donnelly found that although her burned skin was healing, she had difficulty extending her small finger and felt that her skin was extremely tight. She experienced "sharp and stabbing pain" on the inside of her "pinky" and found it extremely sensitive to touch. Although Elite Staffing was not paying medical bills and Donnelly had no health insurance, she made an appointment at a burn center approximately 2 weeks after the injury. Dr. Voigt at the burn center prescribed burn cream and range of motion exercises. Donnelly testified that he told her it may take a few months for the pain to resolve.

After Elite Staffing told Donnelly that they had no more work for her, Donnelly sought employment elsewhere. She began working full-time with her current employer on May 28, 2013.

Donnelly testified that rather than improving, the pain in her "pinky" finger and knuckle began to spread throughout her entire hand. In the time period leading up to January 2014, she experienced a daily pain level of "6".

After Donnelly obtained health insurance through her new employer, she returned to Dr. Voigt at the burn center in February 2014. Dr. Voigt recommended a desensitizing cream and a follow-up visit in 2 weeks. At the next appointment, Dr. Voigt observed that Donnelly's finger had a full range of motion and that the cream had improved the sensitivity of the skin. However, Dr. Voigt noted continued joint pain in the finger. After continued treatment with the cream did not resolve the joint pain, Dr. Voigt recommended a steroid injection to the joint. However, Dr. Voigt's physician's assistant, who administered the injection, accidentally drove the needle fully through Donnelly's finger and into her leg. Donnelly described that her hand was in "agony" after the injection and Dr. Voigt referred her to a hand surgeon, Dr. Gustavo Machado.

Dr. Machado recommended casting for 3 weeks to allow the hand to rest, and also prescribed Medrol and Lyrica. When the cast did not decrease Donnelly's pain, Dr. Machado referred her to a physiatrist, Dr. Robert Rentfro. After continued treatment with Dr. Machado and Dr. Rentfro, Donnelly was diagnosed with complex regional pain syndrome (CRPS) in her left hand.

At trial, the compensation court found that Donnelly was not yet at maximum medical improvement, but awarded her temporary total disability (TTD) from April 16, 2013, to May 28,

2013; payment of all medical bills submitted to this point; a waiting-time penalty on the TTD; and attorney fees of $6,000. Elite Staffing timely appealed.

## ASSIGNMENTS OF ERROR

Elite Staffing assigns, restated and renumbered, that the compensation court erred in (1) awarding TTD benefits to Donnelly; (2) not finding reasonable controversy regarding liability for medical bills, which would have prevented its award of attorney fees; and (3) awarding $6,000 in attorney fees without evidence in the record to support the time and labor required by the case. In conjunction with this assigned error, Elite Staffing also assigns and argues that the court failed to present a reasoned opinion.

Elite Staffing also assigns that the compensation court erred in awarding accrued medical expenses, and not finding reasonable controversy regarding liability for temporary disability. However, these 2 assignments were not argued in Elite Staffing's brief. Errors that are assigned but not argued will not be addressed by an appellate court. *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012). Therefore, we consider only the assignments numbered here as 1 through 3.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. Int'l Paper Destruction & Recycling*, 291 Neb. 415, 865 N.W.2d 371 (2015). In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law. *Id.*

## ANALYSIS

*Temporary Total Disability.*

Elite Staffing first assigns that the compensation court erred in awarding TTD to Donnelly because the record does not support a determination that she was unable to work due to the burn she suffered at work.

Temporary disability payments contemplate the period the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Uzendoski v. City of Fullerton*, 177 Neb. 779, 131 N.W.2d 193 (1964). In order to receive compensation benefits for an accident, the injured employee must prove that he or she has sustained an injury resulting in disability, and the disability must be such that the employee can no longer perform the work required. *Fay v. Dowding, Dowding & Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001). It is axiomatic that no disability benefits will be paid under the Nebraska Workers' Compensation Act unless there is evidence that a disability has been suffered. *Id.* For example, the Nebraska Supreme Court has stated that a worker who voluntarily took four days absence from work in order to determine if her repetitive-stress injury would improve away from

the office did not submit sufficient evidence to prove that she was unable to work during that time period. *Id.*

Similarly, the record here contains no evidence that Donnelly was unable to work following her burn on April 16, 2013, and before she began work full-time with her current employer on May 28. The evidence shows that Donnelly sustained a second-degree, blistering burn through gloves on her fourth and fifth digits--"ring and pinky fingers"--of her left hand when she touched a piece of hot metal that had recently been welded. Donnelly was seen by 2 doctors during the relevant time period. The day after her accident, Donnelly saw her primary care physician who prescribed treatment with bacitracin, daily washing with soap, and bandaging for her burned fingers. Notes stemming from her visit to the burn center approximately 2 weeks after the injury state that the burn itself had fully healed but she had lingering skin pain and sensitivity. Although both doctors treated Donnelly's burn, neither indicated that she should be placed off work, nor did they give her any work restrictions.

Donnelly's testimony also fails to establish that she was unable to work during this time period. Donnelly testified that during the relevant time period, the skin was healing, but she could not extend her finger all the way out and felt that the skin was extremely tight. She also described a sharp and stabbing pain on the inside of her "pinky" where it was extremely sensitive to the touch. While this testimony establishes a work-related injury was healing over the relevant time period, it does not establish that the injury interfered with Donnelly's ability to work.

Donnelly had only begun working with Elite Staffing 2 days prior to her injury. She was told on the day of her injury that the company with which she was placed no longer needed her. When she contacted Elite Staffing after having been treated by her primary physician, it did not tell her whether it had any further work for her. When asked whether it told her "to stay at home" or "to come in and work" Donnelly testified "No, they did not tell me to come in and work." She stated at trial that after she learned that Elite Staffing did not have any further work for her, she began searching for employment elsewhere. The record reveals that at the time of the injury, Donnelly was working on an assembly line punching holes in metal. Donnelly offered no testimony on whether she would have been able to perform the work she had been doing at the time of her injury, had it been offered to her. However, the employment that she ultimately obtained 6 weeks post-injury also involved manual labor requiring dexterity of her hands.

Given that the work Donnelly was performing at the time of her injury was temporary in nature, the fact that Elite Staffing did not offer work to Donnelly following the injury is not independently sufficient to establish that the injury prevented her from working. In fact, according to Donnelly, she immediately began looking for similar employment, which would negate a finding that she was unable to perform the work.

Although Donnelly testifies that her hand currently impairs her ability to perform work, the record reflects that her condition has significantly worsened and she has developed CRPS since her initial healing period. Therefore, this testimony about her current condition does not establish that Donnelly suffered these impairments during the 6 weeks between injury and obtaining her current employment. Because neither Donnelly's testimony nor medical evidence in the record establishes that Donnelly was unable to work between April 16, 2013, and May 28, 2013, we determine that the trial court abused its discretion in awarding TTD for this time period and we reverse that portion of the award.

*Award of Attorney Fees.*

Elite Staffing next assigns that the compensation court erred in awarding attorney fees because there was reasonable controversy regarding its liability for Donnelly's medical bills and weekly benefits.

As construed by the Nebraska Supreme Court, Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014) authorizes waiting time penalties and attorney fees, where there is no reasonable controversy regarding an employee's claim for workers' compensation benefits and payments are delinquent. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). A reasonable controversy may exist if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning a dispositive aspect of an employee's claim for workers' compensation. *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000). However, even if the total amount of compensation due is in dispute, the employer nevertheless has a duty to promptly pay that amount which is undisputed. *Kubik v. Union Ins. Co.*, 4 Neb. App. 831, 550 N.W.2d 691 (1996).

Here, the parties stipulated that Donnelly was injured at work. However, Elite Staffing did not pay even Donnelly's visit to her family doctor the day after her injury or her visit to the burn center 2 weeks later, despite accepting liability for the initial injury. Although Dr. Voigt's June 2014 opinion that he does "not believe that the pain [Donnelly] is having now is related to her work injury" created reasonable controversy as to Elite Staffing's liability for her 2014 medical bills, this opinion did not create reasonable controversy regarding the 2013 bills related to treatment immediately after the injury. Accordingly, the compensation court was correct to award attorney fees under § 48-125 for collection of Donnelly's 2013 medical bills.

*Amount of Attorney Fees.*

Elite Staffing next assigns that the compensation court was unreasonable in awarding $6,000 in attorney fees. The statute does not mandate the amount of attorney fees to be collected, but authorizes a "reasonable" fee. Neb. Rev. Stat. § 48-125. The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis. *Simmons v. Precast Haulers, Inc.*, 288 Neb. 480, 849 N.W.2d 117 (2014). Although the statute does not limit reasonable attorney fees to those directly attributable to the collection of an unpaid medical bill, it requires that the award be reasonable under the circumstances of the case. *Id.* In assessing reasonable attorney fees in a workers' compensation case, particular attention should be given to the amount of legal work performed in relation to the amount of the unpaid medical expense and the amount of the unpaid medical expense in relation to the workers' compensation award received. *Id.*

The record before us does not contain any evidence of the attorney fees charged for the case or what portion of the fees were directly attributable to the collection of the underpayments. While in some civil cases we have allowed fees to be assessed with limited evidence given that trial courts are "regarded as experts on the value of legal services;" see *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000); the workers' compensation context requires consideration of factors including the amount of legal work performed to obtain the underpayment that authorizes the attorney fees. *Zwiener v. Becton Dickinson-E.*, 285 Neb. 735, 829 N.W.2d 113

(2013). See, also, *Simmons v. Precast Haulers*, *supra*; *Harmon v. Irby Const. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999).

The $6,000 award of attorney fees in this case is unreasonable in light of the record's lack of evidence concerning fees. See *Cochran v. Bill's Trucking, Inc.*, 10 Neb. App. 48, 624 N.W.2d 338 (2001) (reversing attorney fees award and remanding for evidence and a further determination). Some award is justified, but the case must be remanded for evidence and specific findings as to the appropriate amount.

## CONCLUSION

The record before us contains no evidence that Donnelly was unable to work during the 6 weeks following her injury. Accordingly, we reverse the compensation court's award of TTD. While we affirm the compensation court's award of attorney fees, we reverse as to the amount of attorney fees and remand with directions for an evidentiary hearing and specific findings of fact as to an amount that is reasonable in light of the considerations outlined in *Simmons v. Precast Haulers*, *supra*, and *Zwiener v. Becton Dickinson-E.*, *supra*.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.