Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/12/2018 09:07 AM CDT

RICHARD CARR, APPELLANT, V. GORDON GANZ,
DOING BUSINESS AS G & H FARMS, APPELLEE.

___ N.W.2d ___

Filed June 12, 2018.    No. A-17-161.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from non-final orders.

5. **Jurisdiction: Appeal and Error.** When an appellate court is without jurisdiction to act, the appeal must be dismissed.

6. **Final Orders: Appeal and Error.** Generally, when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while expressly reserving some issue or issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.

7. **Statutes: Courts.** When interpreting a statute, a court will first consider the plain language.

8. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

9. **Workers' Compensation.** Under the Nebraska Workers' Compensation Act, it has long been the policy to construe the statute liberally so that its beneficent purposes may not be thwarted by technical refinements of interpretation.

10. ____. The obvious purpose of Neb. Rev. Stat. § 48-120 (Cum. Supp. 2016) is to authorize the compensation court to order an employer to pay the costs of the medicines and medical treatment reasonably necessary to relieve the worker from the effects of the injury.

11. ____. An order modifying an award to exclude a specific surgery does not foreclose an employee from establishing at a later date that the surgery is reasonably necessary to treat his or her compensable injury and is therefore encompassed under the terms of the award.

12. ____. The general rule under Neb. Rev. Stat. § 48-120 (Cum. Supp. 2016) is that, should a court determine a medical treatment for a condition unrelated to a work-related injury is medically reasonable and necessary to treat the underlying work-related injury, the medical treatment is required by the nature of the injury and is compensable.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Reversed and remanded for further proceedings.

Ryan C. Holsten and Brynne Holsten Puhl, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellant.

John W. Iliff and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Inbody and Bishop, Judges.

Inbody, Judge.

### INTRODUCTION

Richard Carr appeals the Nebraska Workers' Compensation Court's denial of his motion to compel Gordon Ganz, doing

business as G & H Farms, to pay for Carr's coronary artery bypass procedure. Specifically, Carr appeals the compensation court's orders on December 23 and 30, 2016, and January 19, 2017. Because we conclude the December 30, 2016, order modified the December 23 order to reserve disposition of some of the issues, the December 23 order was not final and appealable until the January 19, 2017, order. Thus, we find Carr's February 7 notice of appeal was timely filed and we have jurisdiction to consider the appeal. For the reasons set forth below, we reverse the compensation court's order pertaining to the compensability of Carr's coronary artery bypass procedure and remand the cause for further proceedings.

FACTUAL BACKGROUND

In January 2012, while employed by Ganz, Carr was "bucked off" a horse and injured in the course of his employment. Specifically, Carr received the following injuries due to the accident: symphysis pubis and sacral fractures, hernia, urinary incontinence, and erectile dysfunction. Following a petition filed with the Nebraska Workers' Compensation Court, the parties entered into a stipulation in April 2014, and the court entered an award pursuant to this stipulation wherein Carr was awarded temporary total disability benefits to be paid by Ganz until Carr reached maximum medical improvement for his injuries. The court stated "[Ganz] is to pay for [Carr's] future medical care all as required by [Neb. Rev. Stat.] § 48-120 [(Cum. Supp. 2016)]."

In February 2015, Carr filed a petition for further award in which he alleged that his doctors felt a "penile prosthesis [was] required" before he would reach maximum medical improvement and that such surgery could not be performed without him first undergoing a heart catherization that Ganz refused to authorize. After the petition was filed, Ganz agreed to pay for the heart catherization and Carr subsequently submitted a notice of dismissal of the petition without prejudice. A dismissal was ordered by the court in July 2015.

Due to the results of the heart catherization, Carr underwent a coronary artery bypass procedure to address issues prior to his penile prosthesis. In May 2016, Carr filed a motion to compel Ganz to pay for the coronary artery bypass procedure. Carr supported his motion by stating that "[p]rior to undergoing the penile prosthesis surgery, [Carr] was required to undergo cardiac treatment [for which Ganz] refused to pay," and Carr asked that "a hearing be held before the Nebraska Workers' Compensation Court and an Order entered compelling payment of outstanding medical bills." In a hearing on the motion, Carr offered various exhibits pertaining to his health expenses, including expenses for the coronary artery bypass procedure, other expenses related to treatment for his injuries, mileage, and attorney fees. Ganz objected to these exhibits and specifically as to any information they contained which documented expenses unrelated to the coronary artery bypass procedure, arguing that they went beyond the scope of Carr's motion. In making this objection, Ganz' counsel stated:

> We're here for a motion to compel on one issue alone, and I believe the stipulated award indicates concisely what the injuries consisted of. And [these offered exhibits and their outlining of other medical expenses, mileage, and attorney fees] really [have] no bearing on this particular motion and also [are] duplicative and not necessary.

The court overruled Ganz' objection.

On December 23, 2016, the compensation court denied Carr's request to compel Ganz to pay medical expenses for the coronary artery bypass procedure. In reaching this determination, the court stated:

> Section 48-120(l)(a) requires an employer to pay for medical services which are required by the nature of the injury <u>and</u> which will relieve pain or promote and hasten the employee's restoration to health and employment. There is no question that the [coronary artery bypass procedure] would relieve pain or promote and hasten [Carr's] restoration to health and employment because

> [the procedure] is necessary to enable [Carr] to undergo
> the [penile prosthesis surgery] which will enable [Carr]
> to reach maximum medical improvement, relieve pain,
> and allow [Carr] to return to employment. The real issue
> is whether or not the coronary artery bypass [procedure]
> was required by the nature of the injury.

The court went on to provide a test for determining when
a medical procedure is required by the nature of the injury,
and explained:

> The test is whether or not there is a reasonable relation-
> ship between the accident at work and the medical condi-
> tion found after the accident. In this case, the coronary
> blockage is not part of the nature of the injury and has
> no reasonable relationship to the injuries suffered in
> the accident.

This order further contained reference to a lump-sum settle-
ment and mentioned such a settlement could impact the impo-
sition of benefits, but the order was otherwise silent as to the
other medical expenses, mileage, and attorney fees discussed
at the hearing.

On December 30, 2016, the court entered an "Order Nunc
Pro Tunc" wherein the court stated that it had been "notified"
by counsel of certain minor errors in the December 23 order,
including that no such lump-sum settlement occurred and that
the court had neglected to address issues of medical expenses,
mileage, and attorney fees. Specifically, the court stated:

> The Court finds counsel are correct, and, as a result,
> the Order entered December 23, 2016 is not a final order.
> A further hearing must be held to correct the order and
> address medical expenses, mileage, attorney fees, and to
> correct the portion of the Order on lump sum settlement
> and erectile dysfunction surgery.

The December 30 order set a further hearing on those issues
for January 2017, and the court again denied Carr's request to
compel Ganz to pay for the medical expenses for the coronary
artery bypass procedure.

On January 19, 2017, the court entered an order requiring Ganz to pay $324 associated with other medical expenses, $500 in attorney fees, and calculated mileage amounts. The court added that "[t]he case is now final." Carr appealed on February 7, which is timely from the January 19 order but not from the December 23, 2016, order.

## ASSIGNMENT OF ERROR

Carr assigns, restated, that the Nebraska Workers' Compensation Court erred as a matter of law in determining his coronary artery bypass procedure was not compensable under Neb. Rev. Stat. § 48-120 (Cum. Supp. 2016).

## STANDARD OF REVIEW

[1,2] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). We independently review questions of law decided by a lower court. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013).

## ANALYSIS

### Jurisdiction

Carr appeals the compensation court's denial of his request that Ganz be ordered to pay for the coronary artery bypass procedure. Although an initial order denied the request on December 23, 2016, Carr argues it was not a final, appealable order because the December 30 order reserved issues for later determination which were finally determined in the January 19, 2017, order. Because the December 23, 2016, order was not a final, appealable order until the January 19, 2017, order

was entered, Carr asserts his filing of a notice of appeal on February 7 was within the 30-day requirement of Neb. Rev. Stat. § 48-182 (Cum. Supp. 2016).

[3-5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002); *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Larsen v. D B Feedyards, supra*. When an appellate court is without jurisdiction to act, the appeal must be dismissed. *Id*.

Once a final order is entered, § 48-182 and Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016) provide the procedure for a party to appeal that order. Within §§ 48-182 and 48-185 is the requirement that once a final order is entered, the parties have 30 days to file a notice of appeal with the compensation court. Any appeal in which notice is not filed within the 30-day period must be dismissed for lack of jurisdiction. See *id*.

In the instant case, Carr filed a motion seeking to compel Ganz for the "payment of outstanding medical bills," including for the coronary artery bypass procedure. In the hearing on the motion, Carr offered various exhibits pertaining to his health expenses, including for the coronary artery bypass procedure, other expenses related to treatment for his injuries, mileage, and attorney fees. Ganz objected to these exhibits as to any information they contained which documented expenses unrelated to the coronary artery bypass procedure, arguing that they went beyond the scope of Carr's motion. Specifically, Ganz stated:

> We're here for a motion to compel on one issue alone, and I believe the stipulated award indicates concisely what the injuries consisted of. And [these offered exhibits and their outlining of other medical expenses,

mileage, and attorney fees] really [have] no bearing on this particular motion and also [are] duplicative and not necessary.

The court overruled Ganz' objection, and on December 23, 2016, entered the first order denying Carr's request to compel Ganz to pay for the medical expenses for the coronary artery bypass procedure. This order contained a reference to a lump-sum settlement and mentioned such a settlement could impact the imposition of benefits. The order was otherwise silent as to the other medical expenses, mileage, and attorney fees discussed at the hearing.

Seven days later, on December 30, 2016, the court entered an order captioned "Order Nunc Pro Tunc." In this order, the court made various corrections to the wording of the December 23 order, including eliminating the reference to the lump-sum settlement. The December 30 order also stated:

> The Court finds counsel are correct, and, as a result, the Order entered December 23, 2016 is not a final order. A further hearing must be held to correct the order and address medical expenses, mileage, attorney fees, and to correct the portion of the Order on lump sum settlement and erectile dysfunction surgery.

The court again denied Carr's request to compel Ganz to pay for the medical expenses for the coronary artery bypass procedure. Following an additional hearing, the court made further findings and ordered that Ganz pay sums associated with other medical expenses, attorney fees, and mileage.

Neb. Rev. Stat. § 48-180 (Cum. Supp. 2016) provides the compensation court the ability to modify an order within 14 days of its entry. Specifically, § 48-180 states:

> The Nebraska Workers' Compensation Court may, on its own motion or on the motion of any party, modify or change its findings, order, award, or judgment at any time before appeal and within fourteen days after the date of such findings, order, award, or judgment. The time for appeal shall not be lengthened because of the

modification or change unless the correction substantially changes the result of the award.

In 2011, § 48-180 was revised to remove the qualifying language that a court could modify a previously entered order "for the purpose of correcting any ambiguity, clerical error, or patent or obvious error." See § 48-180 (Reissue 2010 & Supp. 2011). See, also, *Walsh v. City of Omaha*, 11 Neb. App. 747, 755, 660 N.W.2d 187, 194 (2003) (interpreting previous language as "the statutory embodiment of nunc pro tunc principles"). The removal of the above-quoted language eliminated a limitation to a modification under § 48-180 to permit a compensation court to modify only through nunc pro tunc orders and expanded a court's ability to modify a previously entered judgment. Therefore, even though the December 30, 2016, order was mislabeled and went beyond an order nunc pro tunc to modify the holding of the December 23 order, such modification was within the court's authority under § 48-180 (Cum. Supp. 2016) and occurred within 14 days after the original order's entry.

Having determined the compensation court's December 30, 2016, order was within the court's authority under § 48-180, the next issue for our consideration is whether the court reserved a determination of the issues of the other medical expenses, attorney fees, and mileage; and, if so, whether such reservation made the court's December 23 order interlocutory and not a final, appealable order.

[6] Generally, when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while expressly reserving some issue or issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). See, also, *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d

377 (2013) (holding that compensation court's finding of compensable injury or its rejection of affirmative defense without determination of benefits is not order that affects employer's substantial right in special proceeding); *Hamm v. Champion Manuf. Homes*, 11 Neb. App. 183, 645 N.W.2d 571 (2002) (determining that order was interlocutory which awarded temporary total disability and permanent partial disability benefits while reserving ruling on medical expenses and mileage and set later hearing date to resolve those issues).

Here, the compensation court did not expressly reserve some of the issues for later determination in the December 23, 2016, order. However, as previously discussed, the court had the authority to modify its December 23 order and did so in its December 30 order. In the December 30 order, the court reserved ruling on the unresolved issues of medical expenses, attorney fees, and mileage until after it held an additional hearing. As entered and then modified, the court's order did not determine all of the issues and was an interlocutory order. As such, the court's ruling was not final and appealable until the reserved issues were decided in the January 19, 2017, order. By doing so, the court modified the time in which Carr would be allowed to appeal, because modifying the December 23, 2016, order to reserve a determination of medical expenses, attorney fees, and mileage substantially changed the result of the award. See § 48-180. See, also, *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015) (determining that, where award was entered February 13, 2015, motion to reopen evidence was filed February 24, and hearing was held sometime in March, because motion was filed 11 days after entry of further award and prior to appellant's appeal, compensation court had authority under § 48-180 to modify its findings), *modified on denial of rehearing* 23 Neb. App. 732, 877 N.W.2d 271 (2016). When the January 19, 2017, order determined these remaining issues, the 30-day period in which either party could appeal began. Because Carr filed a notice of appeal on February 7,

Carr's appeal was timely filed and this court has jurisdiction to consider his appeal.

## Compensability of Carr's Coronary Artery Bypass Procedure

Carr assigns that the compensation court erred as a matter of law in determining the coronary artery bypass procedure was not compensable under § 48-120. Specifically, Carr claims the coronary artery bypass procedure was medically reasonable and necessary before he could treat his work-related injuries. Carr argues a medical procedure that is a medical necessity is compensable if it is designed to directly relieve the effects of the claimant's work-related injury or make him or her a candidate for a compensable treatment. As such, Carr asserts the compensation court erred in failing to utilize this medical necessity standard and failing to find the coronary artery bypass procedure was compensable, because it was necessary to perform the compensable penile prosthesis surgery.

Carr sustained injuries arising out of his employment with Ganz, including the following injuries: symphysis pubis and sacral fractures, hernia, urinary incontinence, and erectile dysfunction. The compensation court entered an award on stipulation of Carr and Ganz to compensate Carr for these work-related injuries, stating that "[Ganz] is to pay for [Carr's] future medical care all as required by § 48-120." Presently, Carr does not contend that the work-related injuries caused the cardiac condition, but instead argues that, because the procedure was necessary to address his work-related injuries, such procedure was covered under § 48-120.

In its December 23, 2016, order, the compensation court determined that the "real issue is whether or not the coronary artery bypass surgery . . . was required by the nature of the injury," because Carr's heart condition was not a result of the work-related injuries but was medically necessary to treat a compensable injury. In analyzing this issue, the court stated that "[t]here are no Nebraska cases on point." The court cited

*Straub v. City of Scottsbluff*, 280 Neb. 163, 784 N.W.2d 886 (2010), and *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009), as Nebraska cases in which courts have found that injuries which arise after a work-related accident, but are causally linked to the injuries occurring at work, are compensable. However, the court noted 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 94.03[5] (2017); a Wyoming Supreme Court case, *State ex rel. Workers' Comp. v. Girardot*, 807 P.2d 926 (Wyo. 1991); and § 48-120's limitation on the payment of medical expenses to those required by "the nature of the injury," and the court determined that "[t]he test is whether or not there is a reasonable relationship between the accident at work and the medical condition found after the accident." Finding "the coronary blockage is not part of the nature of the injury and has no reasonable relationship to the injuries suffered in the accident," the court denied Carr's request to compel Ganz to pay for the medical expenses for the coronary artery bypass procedure.

[7-9] Section 48-120(1) provides that an "employer is liable for all reasonable . . . services . . . and medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment." When interpreting a statute, a court will first consider the plain language. See *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013). In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Id*. Under the Nebraska Workers' Compensation Act, it has long been the policy to construe the statute liberally so that its beneficent purposes may not be thwarted by technical refinements of interpretation. See *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975).

[10] The obvious purpose of § 48-120 is to authorize the compensation court to order an employer to pay the costs of the medicines and medical treatment reasonably necessary to relieve the worker from the effects of the injury. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012) (further explaining that provision exists because it is obvious fact of industrial life that injured worker can reach maximum medical improvement from injury and yet require periodic medical care to prevent further deterioration in his or her physical condition). The language of § 48-120 does not state that a medical procedure is compensable only if it is directly treating an injury caused by the work-related accident. Instead, § 48-120's language is more inclusive and describes that a compensable medical procedure must be "required by the nature of the injury" and "will relieve pain or promote and hasten the employee's restoration to health." Ganz argues the phrase "required by the nature of the injury" limits compensation to only those treatments which are reasonably related by causal connection to the injury, while Carr argues "required by the nature of the injury" encompasses all medical treatment that would lead to a relief in pain or promote the employee's restoration to health.

In *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005), the Nebraska Supreme Court considered this question. There, an employee sought benefits for a gastric bypass surgery that was not causally connected to the work-related injuries, but which he contended was medically necessary because his weight precluded him from undergoing the surgery necessary to treat his work-related injuries. The compensation court upheld the employer's objection to liability for this treatment, noting that although future medical benefits had been awarded, the record "'at this point'" did not establish that the gastric bypass surgery was necessary to treat the work-related injuries. *Id.* at 766, 707 N.W.2d at 240. The Nebraska Supreme Court concluded that the denial was not clearly erroneous and stated:

Given the sparseness of the record concerning whether gastric bypass surgery was medically reasonable and necessary to treat [the employee's] compensable injuries, and whether gastric bypass surgery would even suffice to make [him] a candidate for further surgery to treat his compensable injuries, we cannot say the single judge was clearly wrong in determining that there was not sufficient evidence at this time to establish that gastric bypass surgery was necessary to the treatment of [the employee's] work-related injuries.

*Id.* at 767, 707 N.W.2d at 240.

[11] In the later case of *Sellers v. Reefer Systems*, 283 Neb. 760, 765, 811 N.W.2d 293, 296 (2012), the Nebraska Supreme Court analyzed this holding in *Rodriguez* and explained that implicit in *Rodriguez* is that "if necessity had been established, the gastric bypass surgery would have been compensable notwithstanding the fact that it was not specifically included in the award of future medical expenses." In *Sellers*, the court determined that an order modifying an award to exclude a specific surgery "'*at present*'" did not foreclose the employee from establishing at a later date that the surgery is "reasonably necessary to treat his compensable injury and is therefore encompassed under the terms of the award." 283 Neb. at 766, 811 N.W.2d at 297.

[12] We find the holdings in *Rodriguez* and *Sellers* to interpret § 48-120 as providing the general rule that, should a court determine a medical treatment for a condition unrelated to a work-related injury is medically reasonable and necessary to treat the underlying work-related injury, the medical treatment is "required by the nature of the injury" and is compensable. See, also, *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008) (finding that use of medicine was medically necessary and compensable even though it was used to treat employee's unrelated sleep apnea, because it was also used to treat side effects of pain medication necessitated by compensable injury).

Here, rather than using the medically reasonable and necessary test provided for in *Rodriguez* and *Sellers*, the compensation court used a "reasonable relationship" test that essentially required the non-work-related medical condition to have resulted from the work-related injury in order for treatment of that condition to be compensable. We acknowledge that such a test incorporates the general rule that there be a relationship between the medical care sought and the original injury and its treatment. *Zitterkopf v. Aulick Indus., supra* (explaining that § 48-120 contemplates causal connection between compensable injury and future medical care). However, as described above, *Rodriguez* and *Sellers* provide an exception when treatment of a non-work-related condition is medically reasonable and necessary in order to treat the compensable injury. See, also, 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 94.03[5] at 94-63 (2017) (explaining that although "the employer cannot be charged with the cost of repairing various non-work-related conditions that are discovered in the course of treatment," "[a]n exception may be recognized . . . when the nonindustrial condition must be dealt with in order to achieve the optimum treatment of the compensable injury"). Thus, the compensation court erred by not applying the medically reasonable and necessary exception and deciding the compensability of Carr's coronary artery bypass procedure only on the question of whether Carr's coronary condition was caused by his work-related injuries.

The compensation court did not consider the evidence under the framework of *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005), and *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012), but found that "the [coronary artery bypass procedure was] necessary to enable [Carr] to undergo the [penile prosthesis] surgery," since Ganz did not present any evidence to the contrary. Therefore, we reverse the compensation court's order on the issue of the compensability of Carr's coronary artery bypass

procedure and remand the cause to the compensation court for further proceedings consistent with this opinion.

## CONCLUSION

Since the compensation court did not consider the evidence in the present matter under the framework of *Rodriguez* and *Sellers*, as discussed herein, we reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.