Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2021 08:08 AM CST

Donna Parks, appellee, v.
Hy-Vee, Inc., appellant.
___ N.W.2d ___

Filed December 4, 2020.    No. S-20-195.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3. **Workers' Compensation: Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

4. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

5. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

6. **Actions: Appeal and Error.** The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage.

7. **Stipulations.** In Nebraska, parties are free to make stipulations that govern their rights, including the issues to be decided, and such stipulations will be respected and enforced by courts so long as the agreement is not contrary to public policy or good morals.

8. **Workers' Compensation.** A preexisting disease and an aggravation of that disease may combine to produce a compensable injury.

9. **Statutes: Intent.** When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context.

10. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

11. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Paul T. Barta and Micah C. Hawker-Boehnke, of Baylor Evnen, L.L.P., for appellant.

Travis Allan Spier and Nolan Niehus, Senior Certified Law Student, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Donna Parks incurred a work-related injury in 2008 while employed by Hy-Vee, Inc., and sought workers' compensation benefits. The initial award granted compensation for past and future medical expenses for her low-back injury but found that she had not reached maximum medical improvement (MMI). It did not address aggravation of Parks' mental health issues.

In 2017, following the filing of motions by both parties, the parties stipulated to the compensation court's resolution of several issues. After a trial, the compensation court resolved

those issues and entered a further award. Relying on expert opinions, the compensation court granted Parks compensation for chronic pain and aggravation of her mental health issues, both caused by the work-related low-back injury. The compensation court later modified the further award upon Parks' motion pursuant to Neb. Rev. Stat. § 48-180 (Cum. Supp. 2018).

Hy-Vee now appeals, alleging that the compensation court failed to properly apply the law-of-the-case doctrine and exceeded its power in modifying the further award. Finding no merit to Hy-Vee's arguments, we affirm.

## BACKGROUND

*Injury and Initial Award.*

In 2008, Parks was working in the Hy-Vee floral department when she was partially pulled into a trash compactor while emptying a heavy bin. In 2010, she sought workers' compensation benefits for injuries she claimed to have incurred.

At trial on the matter, the compensation court received evidence that Parks had sustained a work-related low-back injury. Further, Parks testified on direct examination that she was not claiming an aggravation of preexisting mental health issues as a result of the work accident. She further testified that her state of mind had been stable since she began working for Hy-Vee in 2004. Parks did not seek temporary disability benefits, because she was employed by Hy-Vee at the time of trial.

The compensation court determined that Parks suffered a compensable low-back injury during her employment with Hy-Vee. It did not address Parks' mental health issues. The award concluded that Parks had not reached MMI regarding her low-back injury and made no finding as to permanent loss of earning power or entitlement to vocational rehabilitation services. It ordered Hy-Vee to pay past and future medical expenses reasonably necessary for evaluation and nonsurgical treatment of the low-back injury.

Thereafter, Parks received regular and varying treatment for her compensable low-back injury, but she continued to

experience pain. In 2012, her treating physician, Dr. Daniel M. Wik, recommended implanting a spinal cord stimulator. In 2014, Wik and an orthopedic surgeon agreed that Parks had reached MMI, and she was assigned work restrictions. Shortly thereafter, a functional capacity evaluation by the agreed-upon vocational rehabilitation counselor concluded that Parks was permanently and totally disabled. Hy-Vee voluntarily paid permanent partial disability benefits from 2014 until 2018.

*Subsequent Motions.*

Meanwhile, in 2017, Parks filed a motion to enforce the award. She requested that Hy-Vee pay for or authorize (1) a psychological evaluation to determine her candidacy for a spinal cord stimulator, (2) a back brace and massage therapy, and (3) various medications. Parks also sought medical expenses incurred after April 28, 2011, permanent disability benefits, and vocational rehabilitation.

Hy-Vee subsequently filed a petition for modification of the award. It asserted, among other things, that after the initial award, Parks had alleged she suffered a compensable mental health injury that Hy-Vee disputed, and that she was not totally disabled. In response, Parks filed an answer admitting that she was alleging a mental health injury and requesting that the compensation court dismiss Hy-Vee's petition for modification for failure to state a claim because Hy-Vee sought judicial determinations on MMI and disability status, issues not previously ruled upon by the compensation court.

*Evidence at Trial.*

The parties presented evidence at a consolidated trial to determine the extent and nature of Parks' compensable disability and associated expenses. Prior to the trial, the parties stipulated the issues to be resolved. Relevant here, those issues included (1) whether the work accident caused Parks to have chronic pain or a chronic pain syndrome, (2) whether the work accident aggravated her preexisting mental health issues, (3) whether medical and mileage expenses identified

in exhibit 69 were reasonable and necessary for treatment of Parks' work-related conditions, (4) the extent of Parks' permanent disability resulting from the work-related injuries, and (5) "any additional benefits the [c]ourt deems warranted based on evidence at the time of hearing." The parties also stipulated that Parks had reached MMI on March 3, 2014, regarding her low-back injury and associated lower extremity symptoms.

Parks presented evidence that her chronic pain was caused by the work accident. Parks had received treatment from Wik monthly since 2010 for persistent low-back pain. In 2011, Wik attributed Parks' low-back pain to the work injury. In 2018, Wik reported that it remained his opinion that all of Parks' low-back diagnoses were caused by the work accident.

Parks also presented the report of Dr. Dennis P. McGowan, a spine surgeon who examined her in March 2019. He diagnosed Parks with "[s]prain to low back caused by 6/2/2008 work injury with continuous disabling low back pain."

Parks testified that she had experienced constant and varying degrees of low-back pain since the accident. The pain radiated down her legs and involved some numbness and tingling in her right leg and foot. Parks acknowledged significant struggles with her mental health in the past, particularly after her husband suffered an aneurysm in 1990. At that time, Parks was hospitalized for what she called a nervous breakdown. Parks testified that as a result, she obtained Social Security disability benefits. Parks testified that when she started working for Hy-Vee in 2004, she was off those disability benefits and her physical and mental health were good. She stated that she was happy to be working and that it was a good point in her life. Other than Parks' testimony about a cut to her finger, there is no evidence that Parks received medical treatment from 2004 to 2008. Parks testified about her efforts to remain employed in some form after her work accident, within her physical restrictions.

Contrary to Parks, Hy-Vee posited that Parks' chronic pain was caused by a somatic symptom disorder or psychological

disorder unrelated to the work accident. It presented the February 2017 report of Dr. Terry Davis, a psychiatrist who conducted a psychiatric evaluation and mental status examination and reviewed a chronology of Parks' medical records and the records produced by Wik. He opined that all of Parks' current pain was the result of a preexisting somatic symptom disorder that was not caused or aggravated by the work accident. Davis described the disorder as a state in which psychological factors initiate, exacerbate, or maintain bodily symptoms. That is, Parks' ongoing back pain complaints were most likely psychogenic and not due to any physical, medical, anatomical, or physiologic cause. He noted that Parks had a history of serious emotional and psychological problems that predated the 2008 work accident and included somatic symptoms as early as 1990. Davis explained that a somatic episode can be brought about unconsciously to manipulate or control relationships, express emotions, or cope with stress. Because of his opinion that Parks' back pain was psychogenic and due to the subjective nature of her complaints, Davis concluded that Parks' symptoms were unlikely to respond to any medical or physical treatment, including a spinal cord stimulator.

Dr. John R. Massey conducted a medical examination of Parks in September 2018 and reviewed Davis' evaluation. He agreed with Davis' opinion that Parks' pain was caused by a somatic symptom disorder rather than the work accident.

The parties also presented evidence regarding the causal connection between Parks' mental health issues and the work accident. Parks' evidence showed that her mental health issues were exacerbated by the low-back injury she incurred at work in 2008. In her testimony, Parks acknowledged that she was diagnosed with depression, anxiety, and posttraumatic stress disorder in the 1990's, but, as noted above, she testified that her mental health had stabilized before she began working for Hy-Vee and that it continued to be stable through the initial trial. However, Parks testified that her mental health changed when Hy-Vee denied coverage for the spinal cord stimulator and she had "no hope for any other treatment."

In February 2017, Wik, who consistently attributed Parks' low-back pain to the work accident, diagnosed Parks with "anxiety due to chronic low back pain." In January 2019, Parks began treatment with Dr. Dianna M. Clyne, a psychiatrist. Parks reported to Clyne that her low-back pain made her depression and anxiety worse. Clyne reviewed Parks' medical documentation, including that of her previous psychiatric hospitalizations. She diagnosed Parks with depressive disorder and anxiety disorder, which she attributed to the work injury and low-back pain. According to Clyne, Parks was at MMI for her depression and anxiety, at least until her low-back condition improved. In March 2019, McGowan reported that Parks' preexisting psychiatric conditions were not related to the work accident, but a few months later, he opined that Parks' preexisting anxiety and depression had worsened as a result of the work-related low-back injury.

Hy-Vee denied any causal connection between the work accident and Parks' depression and anxiety. As explained above, Hy-Vee presented opinion evidence that Parks' chronic pain, which Parks identified as the source of her worsening anxiety and depression, was not caused by the work accident but by a somatic symptom disorder. Further, Davis specifically opined that Parks did not suffer from any psychological symptoms or injury that was caused by or exacerbated by the work accident. He noted that Parks suffered from depression and anxiety for many years before the work accident.

Exhibit 69 set forth medical expenses that Parks alleged were work related. The parties stipulated that exhibit 69 accurately reflected the total billed charges, third-party payments, and writeoffs; Parks' out-of-pocket expenditures and mileage incurred; and the outstanding balances as set forth in itemized billing statements from providers. Parks' testimony did not specifically request compensation for the expenses itemized in exhibit 69, and according to statements in posttrial orders made by the compensation court, nor did her counsel's written closing arguments.

*Further Award.*

Following trial, the compensation court dismissed with prejudice Hy-Vee's petition for modification and entered a further award. It awarded Parks permanent total disability benefits but denied vocational rehabilitation.

The compensation court found that while the evidence did not show that Parks had a chronic pain syndrome, it supported a finding of chronic pain caused by the work accident. In analyzing the issue, the compensation court concluded that the opinions of Davis and Massey violated the law-of-the-case doctrine and "should be rejected for that reason alone," but additionally observed that even "[p]utting aside the legal problem with [Hy-Vee's] position," it found Parks' witnesses more persuasive on the issue than Hy-Vee's. In particular, the compensation court noted that it was not persuaded by the opinions of Davis and Massey that Parks' pain was psychogenic in nature and noted that it was persuaded by Wik's opinion that Parks was suffering physical pain caused by her work accident. The compensation court also cited the opinion of McGowan, who had diagnosed Parks with a work-related low-back sprain "with continuous disabling low back pain." Further, the compensation court found Parks' testimony about her pain credible and observed that she had sought treatment for her pain and continued to work. In the court's view, these factors demonstrated that Parks suffered "actual physical pain caused by her work accident," not pain caused by a somatic symptom disorder.

As to Parks' depression and anxiety, the compensation court again relied on the opinion of Wik, whose office notes showed a causal connection between Parks' depression and anxiety, her work accident, and her low-back pain. The compensation court also noted McGowan's opinion that Parks' depression and anxiety were worsened by the work-related low-back injury and Clyne's opinion that her depression and anxiety were exacerbated by it. Further, the compensation court relied on Parks' own testimony that her depression and anxiety were made worse by her pain. It again rejected Hy-Vee's assertion,

based on Davis' opinion, that Parks suffered from a somatic symptom disorder and that her depression and anxiety were not caused or exacerbated by the work accident.

Finally, the compensation court awarded Parks the mileage expenses identified in exhibit 69. It noted that exhibit 69 also identified medical expenses, but it did not include those expenses in the further award. The compensation court expressed confusion about whether Parks sought an order directing Hy-Vee to reimburse her for medical expenses. It noted that in her testimony, Parks had not asked the compensation court to order that she be reimbursed for those expenses, and that Parks' counsel had not mentioned the medical expenses identified in exhibit 69 in written closing arguments.

*Modification of Further Award.*

Less than a week after the further award, Parks filed a motion to modify it pursuant to § 48-180. Parks sought past medical expenses identified in exhibit 69, which were not part of the further award.

At the hearing on the motion, the compensation court explained that there was no failure of proof as to compensability for the medical expenses at issue. Instead, the court stated it had not awarded compensation for the medical expenses because Parks had not explicitly asked for it in her testimony or written closing arguments.

The compensation court modified the further award to include all of the medical expenses identified in exhibit 69 and ordered Hy-Vee to pay providers for outstanding balances and reimburse anyone who had already paid the providers, including Parks.

Hy-Vee appeals.

ASSIGNMENTS OF ERROR

Hy-Vee assigns, consolidated and renumbered, that the compensation court erred in (1) applying the law-of-the-case doctrine to disregard the somatic symptom disorder diagnosis and relying on that determination to reject every argument made

by Hy-Vee, (2) failing to apply the law-of-the-case doctrine to Parks' alleged mental health injury, and (3) using § 48-180 to correct a mistake made by Parks' counsel.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

[2,3] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

[4] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

[5] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Frans v. Waldinger Corp.*, 306 Neb. 574, 946 N.W.2d 666 (2020).

## ANALYSIS

*Chronic Pain.*

We begin our analysis with Hy-Vee's argument that the compensation court erred in finding that Parks' chronic low-back

pain was caused by her work injury and not a somatic symptom disorder. Hy-Vee claims that the compensation court entirely based its finding on an incorrect application of the law-of-the-case doctrine. We are not persuaded.

[6] The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). The compensation court concluded this doctrine precluded it from relying on the opinions of Davis and Massey that Parks' chronic pain resulted from a somatic symptom disorder. The compensation court viewed these opinions as contradictory to the initial award's finding that Parks had injured her lower back in the work accident. Hy-Vee asserts that nothing in the opinions of Davis or Massey calls the work injury itself into question and that thus, the compensation court erroneously based its rejection of a somatic symptom disorder on the law-of-the-case doctrine.

But while the compensation court relied on the law-of-the-case doctrine as a basis for finding that a somatic symptom disorder was not the cause of Parks' pain, that was not the only basis upon which it relied. After analyzing the law-of-the-case doctrine as it related to the opinions of Davis and Massey and stating that their opinions "should be rejected for that reason alone," the compensation court went on to say that even if the "legal problem" posed by the law-of-the-case doctrine were set to the side, it was not persuaded by Davis and Massey that Parks' pain was caused by a somatic symptom disorder. The compensation court then explained why it was not persuaded by Davis and Massey and why it was persuaded by Wik that Parks was suffering from pain due to her work-related low-back injury. The compensation court thus made a factual finding, independent of any of its legal conclusions regarding the law-of-the-case doctrine, that Parks' pain was caused by her work-related low-back injury.

Given the compensation court's independent factual finding regarding the cause of Parks' pain, we need not consider

Hy-Vee's law-of-the-case argument so long as the compensation court's factual finding was not clearly erroneous. We agree with Parks that it was not. In support of its factual finding, the compensation court cited the opinion of Wik, who attributed Parks' current low-back pain to the work accident. The compensation court acknowledged that this opinion conflicted with the opinions of Davis and Massey but expressly found Wik more persuasive. Hy-Vee is critical of this finding, but it was a credibility determination that the compensation court alone was entitled to make. See *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). The compensation court further relied on the report of McGowan, who in 2019 diagnosed Parks with "[s]prain to low back caused by 6/2/2008 work injury with continuous disabling low back pain." This evidence was sufficient to support the compensation court's factual determination that Parks' chronic low-back pain was caused by her work accident.

Reading the further award and the record as a whole, we conclude that the evidence was sufficient to support the compensation court's factual finding that Parks' chronic low-back pain resulted from her work accident, as well as the portions of the further award, as modified, stemming from that determination, including the conclusion that Parks was entitled to coverage for various treatments and the expenses set forth in exhibit 69.

*Aggravation of Depression and Anxiety.*

In challenging the compensation awarded for Parks' depression and anxiety, Hy-Vee again turns to the law-of-the-case doctrine. But this time Hy-Vee assigns that the compensation court should have applied the doctrine to bar Parks from receiving compensation for an aggravation of her preexisting depression and anxiety. In large part, Hy-Vee argues that the compensation court violated the law-of-the-case doctrine by making determinations that it could not make in modifying the initial award. As we will explain, however, we do not agree that the court entered a modification order and Hy-Vee's

reliance on the law-of-the-case doctrine is misplaced. Further, contrary to Hy-Vee's assertions otherwise, the compensation court's award of compensation for an aggravation of Parks' mental health issues was supported by the evidence.

We first address Hy-Vee's argument that the procedural posture of this case precluded Parks from receiving compensation for an aggravation of her depression and anxiety. Hy-Vee classifies the further award as a modification order pursuant to Neb. Rev. Stat. § 48-141(2) (Reissue 2010). According to Hy-Vee, even if Parks' mental health conditions worsened after the initial award, it was not within the scope of a modification order to award compensation for that change in her condition, because it represented a "completely new" injury. Reply brief for appellant at 11.

Section 48-141 provides that "the amount of any agreement or award payable periodically may be modified" upon an application of a party "(2) . . . on the ground of increase or decrease of incapacity due solely to the injury." To establish a change in incapacity as the term is used in § 48-141, an applicant must show a change in impairment and a change in disability; impairment refers to a medical assessment whereas disability relates to employability. See *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013), citing *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825 N.W.2d 820 (2013).

The procedural history of this case demonstrates that the further award was not a modification order pursuant to § 48-141. The initial award made no determinations regarding the degree and duration of Parks' disability; nor did it award periodic payments. Hy-Vee subsequently paid some periodic benefits by agreement for a time, but those payments ceased before the trial that produced the further award. In the meantime, Parks filed her motion to enforce the award, raising several issues disputed between the parties, and Hy-Vee filed its motion to modify. In response, Parks asked that Hy-Vee's motion to modify be dismissed for failure to state a claim, because Hy-Vee sought judicial determinations on issues not previously ruled upon by the compensation court.

The parties thereafter stipulated that the compensation court should consider whether Parks' work-related low-back injury caused chronic pain; whether Parks' work-related low-back injury and resulting chronic pain aggravated her preexisting mental health conditions; and whether, having reached MMI, she was permanently disabled, along with "any additional benefits the [c]ourt deems warranted based on evidence at the time of the hearing." The court tried these issues, among others, at a consolidated trial. These issues were aimed at determining the degree and duration of Parks' disability for the first time. Because they had not yet been determined and there was no agreement pertaining to them in effect, there was no "agreement or award" regarding "incapacity" for the compensation court to modify. See § 48-141(2). Indeed, the further award recognized as much by dismissing Hy-Vee's motion to modify the initial award, with prejudice.

Hy-Vee maintains that Parks could obtain compensation for the aggravation of her mental health conditions only by filing a "new petition for this newly emerged claim." Reply brief for appellant at 12. But Neb. Rev. Stat. § 48-162.03(1) (Cum. Supp. 2018) grants the compensation court broad authority to rule on any motion except motions for new trial. The requests for relief that prompted the further award—Parks' motion to enforce the award, Hy-Vee's motion to modify the award, and Parks' prayer for dismissal of Hy-Vee's motion to modify— were all related to that pending case and "encompassed by the motion practice under the broad language of § 48-162.03(1)." See *Fentress v. Westin, Inc.*, 304 Neb. 619, 630, 935 N.W.2d 911, 921 (2019). No new petition was necessary.

[7] Further, Hy-Vee stipulated that the compensation court could decide whether the work accident aggravated Parks' preexisting mental health issues. Hy-Vee is thus now asking us to find that the compensation court erred in taking up an issue that the parties stipulated it should resolve. However, we have said that in Nebraska, parties are free to make stipulations that govern their rights, including the issues to be decided, and that such stipulations will be respected and

enforced by courts so long as the agreement is not contrary to public policy or good morals. See *Archer Daniels Midland Co. v. State*, 290 Neb. 780, 861 N.W.2d 733 (2015). In this case, we see nothing to persuade us that the compensation court erred in honoring the parties' stipulations regarding the issues to be decided.

Hy-Vee contends that whatever the parties' stipulations, they did not authorize the compensation court to disregard the law-of-the-case doctrine. Hy-Vee argues the doctrine applies here because the compensation court did not find in its initial award that Parks' mental health was affected by the work accident. According to Hy-Vee, this precludes the compensation court from considering the issue. As we have noted, however, the doctrine reflects the principle that an issue *litigated and decided* in one stage of a case should not be relitigated at a later stage. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). See, also, 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478 at 628 (5th ed. 2019) ("[a]ctual decision of an issue is required to establish the law of the case"; "[l]aw of the case does not reach a matter that was not decided"). Here, the question of whether Parks had suffered an aggravation of her depression and anxiety as a result of her work-related low-back injury was not litigated and decided in the initial trial. Parks did not assert any mental health injuries at that time, and therefore, the initial award made no finding pertaining to the matter. Hy-Vee is thus mistaken that the law-of-the-case doctrine precluded the compensation court from finding compensable mental health injuries in the further award.

Lastly, Hy-Vee contends that the compensation court erred in determining that Parks' aggravated mental health condition was caused by the work accident, contrary to the opinions of Davis upon which Hy-Vee based much of its evidence. However, the compensation court made credibility determinations, discounted Davis' hypotheses, and relied on Parks' evidence, all of which were within its authority to do. See

*Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). And Parks' evidence regarding her mental health was sufficient to support the compensation court's award.

Parks herself acknowledged her preexisting mental health issues, but said they had stabilized before the accident. Parks testified that her mental health condition continued to be stable until after the initial trial, when Hy-Vee denied coverage for the spinal cord stimulator and she had "no hope" for other treatment of her chronic low-back pain. In 2017, Wik, who attributed Parks' low-back pain to the work accident, diagnosed Parks with anxiety due to chronic low-back pain. And in 2019, Parks reported to Clyne that her low-back pain made her depression and anxiety worse. Clyne diagnosed Parks with depression and anxiety disorders due to the work injury and low-back pain. A few months later, McGowan opined that Parks' preexisting anxiety and depression had worsened as a result of the work-related low-back injury.

[8] A preexisting disease and an aggravation of that disease may combine to produce a compensable injury. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). To be compensable, a subsequent injury or aggravation related to the primary injury must be a direct and natural result of the work accident. See *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004). Parks' evidence demonstrated such a direct and natural connection: Her evidence showed that the aggravation of her depression and anxiety was caused by her work-related low-back injury. Accordingly, the compensation court did not err in finding it compensable.

*Section 48-180 Modification.*

Finally, Hy-Vee claims that the compensation court exceeded the authority granted to it in § 48-180 by modifying the further award to make Hy-Vee responsible for all of the expenses listed in exhibit 69. Section 48-180 provides:

> The Nebraska Workers' Compensation Court may, on its own motion or on the motion of any party, modify

or change its findings, order, award, or judgment at any
time before appeal and within fourteen days after the date
of such findings, order, award, or judgment. The time for
appeal shall not be lengthened because of the modifica-
tion or change unless the correction substantially changes
the result of the award.

Before addressing Hy-Vee's argument, we briefly note some
relevant history regarding § 48-180. Prior to a 2011 amend-
ment, § 48-180 authorized modification by the compensation
court, but only "for the purpose of correcting any ambiguity,
clerical error, or patent or obvious error." See 2011 Neb. Laws,
L.B. 151, § 11. In its earlier form, § 48-180 was understood as
a "statutory embodiment of nunc pro tunc principles." *Walsh
v. City of Omaha*, 11 Neb. App. 747, 755, 660 N.W.2d 187,
194 (2003). As a result of the 2011 amendment, the compensa-
tion court's authority to modify previously entered findings,
orders, awards, and judgments is no longer limited to nunc pro
tunc orders. See *Carr v. Ganz*, 26 Neb. App. 14, 916 N.W.2d
437 (2018).

Hy-Vee acknowledges that the 2011 amendment to § 48-180
expanded the compensation court's modification authority, but
contends that the compensation court nonetheless lacked the
authority to modify the further award here. Hy-Vee argues
that in its current form, § 48-180 authorizes the compensation
court to make substantive modifications to its prior rulings, but
only to correct its own mistakes, not to remedy a mistake or
oversight of a party. Hy-Vee contends that the compensation
court did not initially award compensation for all of the medi-
cal expenses identified in exhibit 69 because Parks failed to
specifically request such relief and that the compensation court
could not, under Hy-Vee's understanding of § 48-180, remedy
her failure to do so.

In response to Hy-Vee's argument, we observe initially that
the modification at issue is not, in our view, easily catego-
rized as a correction of a mistake or oversight on the part of
Parks. The compensation court stated that it did not initially

include all of the medical expenses identified in exhibit 69 in the further award because Parks did not, in her testimony, express a desire to be reimbursed for medical bills and because the written closing arguments submitted by her counsel also did not specifically request such reimbursement. Hy-Vee does not, however, point us to any procedural rule or other legal authority that required such a request from Parks. Neither are the written closing arguments at issue a part of our record on appeal. Furthermore, the parties stipulated prior to trial that one of the issues to be determined was "[w]hether medical and mileage expenses identified in Trial Exhibit 69 were reasonable and necessary for treatment of [Parks'] work-related injuries/conditions." And, as the compensation court stated in its modification order, it did not omit the medical bills identified in exhibit 69 from its initial further award because Parks failed to prove an entitlement to compensation for them. Although the compensation court may not have initially understood that Parks was seeking compensation for all of the medical bills identified in exhibit 69, given the foregoing facts, we have doubts about whether that can be attributed to a mistake or oversight of Parks.

In any event, we need not decide whether Parks or the compensation court is to blame for the initial omission from the further award of the medical bills identified in exhibit 69. Such an assignment of fault is not necessary, because the compensation court's modification authority under § 48-180 does not turn on whether modification is being made to correct a mistake of the court or of a party. We reach this conclusion through application of familiar principles of statutory interpretation.

[9-11] When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.* It is not

within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Id.*

Hy-Vee's argument that § 48-180 authorizes modification only to correct an error made by the court cannot survive an application of these principles. The text of § 48-180 does not differentiate between "mistakes" made by the court and those made by parties. Indeed, it does not mention "mistakes" or a similar concept at all. Nor does it otherwise limit the reasons for which a compensation court may modify its findings, order, award, or judgment: Under § 48-180, the court may do so "on its own motion or on the motion of any party." The interpretation advanced by Hy-Vee thus requires that meaning not found in the text of § 48-180 be read into the statute. We do not interpret statutes in this manner. See, e.g., *State v. Garcia*, 301 Neb. 912, 920 N.W.2d 708 (2018).

Unable to make an argument in support of its preferred interpretation based on the statutory text, Hy-Vee resorts to the absurd results doctrine. Under that doctrine, a court may deviate from the plain language of the statutory text if application of the plain language would lead to "'manifest absurdity.'" See *Rogers v. Jack's Supper Club, supra*, 304 Neb. at 613, 935 N.W.2d at 761, quoting *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012). But the bar of manifest absurdity is not easily cleared. We have refused to apply the doctrine if the result dictated by the plain language is not "so absurd that the Legislature could not possibly have intended it." *Thomas v. Peterson, ante* p. 89, 97, 948 N.W.2d 698, 705 (2020), citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 234-39 (2012). See, also, *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019) (Papik, J., concurring).

Rather than arguing that application of the plain language will result in an absurd result in this case, Hy-Vee primarily contends that if its preferred interpretation is not adopted, there will be absurd results in other cases. Hy-Vee asks us

to consider various hypothetical scenarios in which parties, for example, fail to offer key pieces of evidence or fail to adequately plead the relief sought and then later seek to remedy their failure by asking for modification under § 48-180. Hy-Vee's hypothetical scenarios, however, are not before us in this case.

The question raised by Hy-Vee's absurdity argument is whether applying the plain language of § 48-180 to authorize the modification of the further award under these circumstances is a result so absurd that the Legislature could not possibly have intended to allow for it. Hy-Vee comes nowhere near clearing that high bar. As noted above, the parties stipulated prior to trial that whether the medical expenses identified in exhibit 69 were reasonable and necessary for treatment of Parks' work-related injuries was one of the issues presented for resolution. There is also no dispute on appeal that Parks adequately proved at trial that such expenses were, in fact, reasonable and necessary. We see no basis to conclude that the Legislature, in enacting § 48-180, could not possibly have intended to authorize the compensation court to modify the further award in the manner it did under these circumstances.

## CONCLUSION

We find that the compensation court's further award was not premised on legal error, that the record supports the findings of fact upon which the further award was based, and that the compensation court did not act in excess of its powers in modifying the further award. Accordingly, we affirm.

AFFIRMED.

STACY, J., not participating.